***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has shown good grounds to reconsider the evidence; therefore the Full Commission AFFIRMS in part and REVERSES in part the Opinion and Award of the Deputy Commissioner
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Brentwood Services provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. Plaintiff's average weekly wage is $497.23 per week as previously determined.
5. The defendants admit plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on or about May 5, 1995.
6. The issues to be determined by the Full Commission are as follows:
 a) Whether plaintiff's condition substantially worsened after August 7, 2000?
 b) If so, what, if any, benefits is plaintiff entitled to receive under the North Carolina Workers Compensation Act?
7. The depositions of Dr. Michael Alexander, Dr. John L. dePerczel, and Dr. Scott M. McCloskey, are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
Plaintiff was employed by defendant-employer as an LPN. Plaintiff's position involved direct patient care, including helping to lift patients.
2. After plaintiff's admittedly compensable May 5, 1995 injury which occurred while she was trying to keep a patient from falling, plaintiff was paid for a 7 1/2% permanent partial disability rating of her back under a Form 21 approved January 5, 1999.
3. After being rated and released by Dr. John dePerczel, orthopedic surgeon, on May 19, 1998, plaintiff's pain returned. Following a myleogram and CT scan, defendants approved L4-5 decompression surgery which was performed on June 29, 2000 by Dr. dePerczel.
4. Pursuant to the Form 62, Notice of Reinstatement or Modification ofCompensation, filed by defendants on or about August 24, 2000, plaintiff was paid temporary total disability compensation from May 3, 2000 through August 20, 2000. Defendants filed a Form 28, Return to Work Report, documenting plaintiff's return to work on August 21, 2000 with defendant-employer earning the same wages as she did prior to her June 29, 2000 surgery.
5. After plaintiff's June 29, 2000 decompression surgery, Dr. dePerczel noted that plaintiff experienced a decrease in her low back pain; however, plaintiff returned to him in September 2000 complaining of sciatic pain and in October 2000 complaining of sacroiliac pain. Plaintiff did not have any other low back injuries. Dr. dePerczel ordered a November 3, 2000 bone scan and November 21, 2000 myleogram/CT. Dr. dePerczel noted in analyzing the results of plaintiff's CT scan that there was merely some scar tissue present at L4-5. Dr. dePerczel's analysis of plaintiff's January 29, 2001 MRI revealed that there was some scarring at L4-5, but no disc herniation.
6. On January 29, 2001, plaintiff complained to Dr. dePerczel of soreness in her back with stiffness but no sciatica symptoms. At this visit, Dr. dePerczel referred plaintiff to neurosurgeon Dr. Scott M. McCloskey for a second opinion.
7. Plaintiff began treating with Dr. McCloskey on February 5, 2001. At this appointment, Dr. McCloskey diagnosed L4-5 discogenic disease and advised plaintiff to pursue pain management and epidural steroid injections. Dr. McCloskey also indicated at this visit that plaintiff presented with no left leg symptoms as she did prior to Dr. dePerczel's surgery. On April 27, 2001, plaintiff informed Dr. McCloskey that the joint injections and medication did not alleviate her pain prompting Dr. McCloskey to recommend plaintiff undergo fusion surgery at the L4-5 level.
8. Plaintiff returned to Dr. dePerczel on June 26, 2001 at which time he diagnosed her condition as spondylolisthesis. Henceforth, Dr. dePerczel did not render any further treatment to plaintiff for her back condition.
9. Plaintiff subsequently referred herself to Dr. Michael Alexander at Duke University Center for treatment of her back condition without notice to defendants. Dr. Alexander also diagnosed plaintiff with spondylolisthesis and subsequently performed plaintiff's fusion surgery at the L4-5 level on November 9, 2001. Dr. Alexander opined that plaintiff would have likely been unable to work for six months following her fusion surgery.
10. Dr. Alexander referred plaintiff to Dr. William Richardson for post-surgical follow-up care. Dr. Richardson released plaintiff to return to part-time work on March 11, 2002 with the restrictions of no bending or twisting or lifting greater than twenty pounds. Dr. Alexander testified that the normal course for patients, such as plaintiff, who have had decompression surgery with an instrumented fusion, is that the patient will be released to work with restrictions, part-time, for a three-month period at approximately three months post surgery. The release to work by Dr. Richardson is consistent with this testimony by Dr. Alexander. Further, Dr. Alexander explained that absent some complications plaintiff should be able to return to work full time without restrictions. The Commission does not have sufficient evidence concerning plaintiff's work status after her release to work on March 11, 2002, to determine her entitlement to disability benefits after this date.
11. Dr. McCloskey opined that plaintiff's compensable May 5, 1995 injury by accident could have likely led to the disc problem for which she had surgery in June 2000 and could be the source of her continued complaints as of the last time he saw her on June 15, 2001. Dr. McCloskey also said that Dr. dePerczel's prior disk surgery could be one of the causes of plaintiff's need for subsequent fusion surgery at the same level.
12. Dr. dePerczel had no question that plaintiff's compensable May 5, 1995 injury by accident caused or aggravated all of plaintiff's back conditions.
13. On August 23, 2001, plaintiff's right knee gave way and she felt a painful snap behind her knee. Dr. dePerczel examined plaintiff's knee the same day and concluded that this knee episode was not related to her compensable back condition. Although there is medical evidence that an injury to the back could cause loss of muscle control in the legs, the Full Commission finds by the greater weight of the competent evidence that plaintiff's knee condition is not related to her May 5, 1995 compensable injury.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Based on the greater weight of the competent evidence, plaintiff has established that her current back condition and her November 9, 2001 L4-5 fusion surgery performed by Dr. Michael Alexander is related to her May 5, 1995 compensable injury by accident and subsequent related back surgery that took place on June 29, 2000. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. Plaintiff sustained a substantial change of condition following her June 29, 2000, L4-5 decompression surgery performed by Dr. John dePerczel and subsequent release to return to work on August 21, 2000. N.C.G.S. § 97-47.
3. Plaintiff's L4-5 fusion surgery performed by Dr. Michael Alexander on November 9, 2001 was necessary to effect a cure, give relief, or lessen the period of disability related to plaintiff's compensable injury by accident on May 5, 1995 or subsequent related surgery on June 29, 2000; therefore, defendants are responsible for payment for any medical treatment rendered by Dr. Alexander including the L4-5 fusion surgery. N.C.G.S. § 97-25.
4. Plaintiff is entitled to receive temporary total disability compensation from November 9, 2001 through March 11, 2002 for her period of disability following the fusion surgery related to her compensable injury by accident. N.C.G.S. § 97-29. The Commission does not have evidence concerning plaintiff's disability after March 11, 2002, when she was released to work; however, defendant is directed to pay disability for plaintiff's compensable back injury in accordance with the Act. If either party has a dispute concerning the benefits, if any, that plaintiff is entitled to receive after March 11, 2002, they may file a Form 24 and/or a Form 33 and request a hearing on the form(s) that are filed.
5. Plaintiff is entitled to receive ongoing medical treatment designed to effect a cure, give relief, or lessen plaintiff's period of disability following her May 5, 1995 compensable injury by accident. N.C.G.S. §97-25.
6. Plaintiff's claim for injury to her right knee occurring on August 23, 2001, is denied because this injury did not arise out of or in the course of her employment and is not the consequence of her compensable back injury. N.C.G.S. § 97-2(6)
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms and modifies the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability in the amount of $331.50 per week for the period from November 9, 2001 through March 11, 2002 subject to the attorney's fee approved below payable in one lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief, and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of compensation benefits due plaintiff is approved for plaintiff's counsel. For benefits that have accrued, this amount shall be deducted from benefits due plaintiff and paid directly to plaintiff's counsel. For continuing benefits, if any, defendants shall pay every fourth check directly to counsel for plaintiff.
4. Defendants shall pay the costs due the Commission.
This the ___ day of May 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER